1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    KELLIE W.,[1]                              Case No.  20-cv-04061-TSH

8                   Plaintiff,
                                                **ORDER RE: CROSS-MOTIONS FOR**
9         v.                                    **SUMMARY JUDGMENT**

10   ANDREW SAUL,                               Re: Dkt. Nos. 21, 24

11                   Defendant.

12

13                          **I.     INTRODUCTION**

14         Plaintiff Kellie W. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

15   review of a final decision of Defendant Andrew Saul, Commissioner of Social Security, denying

16   Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for

17   summary judgment.  ECF Nos. 21 (Pl.'s Mot.), 24 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-

18   5, the motions have been submitted without oral argument.  Having reviewed the parties'

19   positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby

20   **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.

21                          **II.     BACKGROUND**

22   **A.     Age, Education and Work Experience**

23         Plaintiff is 52 years old.  AR 187.  She earned a college degree and worked as a registered

24   pediatric nurse for Kaiser from 1995 through 1997 and from 2001 until 2014.  AR 38-39, 213,

25   225-26, 1482-83.

26

27   _____

28   [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
     recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States.

B.      **Medical Evidence**

In September 2003, Plaintiff injured her back while moving a patient.  AR 590, 1482.  She was able to finish her shift but experienced severe pain and muscle spasms the following day.  AR 1482.  In 2005 she underwent lumbar spine surgery consisting of a L3-4 decompression and interbody fusion.  AR 591, 1482, 1488.  Plaintiff continued to experience pain, but she returned to work as a nurse.  AR 591-92, 1482.  In 2009 she underwent a second back surgery consisting of a L3-4 discectomy and a second fusion utilizing an interbody cage.  AR 593, 1483, 1488.  After the second surgery Plaintiff again returned to work but in an accommodated position with assistance from the pain management program.  AR 593-94.

In 2011 Plaintiff was arrested for a DUI as a result of being under the influence of pain medication while driving home from work.  AR 44, 197.  After she plead guilty to the offense, the California Nursing Board placed her on probationary status.  *Id.* (both).  In 2014 Kaiser terminated Plaintiff because her nursing license was in probationary status, which required her to work under direct observation for 50% of her shift schedule.  *Id.* (both).

1.      **Mental Health Records**

The record reflects symptoms of depression and anxiety dating back as far as 2003.  AR 334.  In 2015 she presented as depressed, anxious and agitated, with difficulties in mood and behavior regulation, communication, interpersonal relationships, irrational thinking, low self-esteem, tearful behavior, dysphoric and anxious mood, stress, only partial concentration, difficulty getting out of her home because of strong feelings of avoidance, and ineffective coping.  AR 335, 346, 363, 368-70, 372, 375, 380-81, 398, 416-18.  She reported only mild improvement in her symptoms with medications.  AR 381, 416.  In August 2015, treating psychiatrist John Francis Mackey, M.D., diagnosed major depression, recurrent, and rated Plaintiff's global assessment of functioning ("GAF") at 51-60.[2]  AR 381, 418.

---

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred.  A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in functioning.  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 30-32 (4th ed. 1994) (DSM-IV) (defining GAF, at pgs. 30-31, and setting forth the 0 through 100 scale, at pg. 34.  A GAF score as 41-50 indicates serious symptoms or serious difficulty in

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff received mental health treatment from Irene Ives, Ph.D., from September 2015

2   through February 2019.  AR 334-36, 581, 1441.  Dr. Ives provided an assessment of mental

3   limitations for Plaintiff's Social Security hearing.  She assessed that Plaintiff was unable to deal

4   with work stress, explaining "[t]he more stressed, the more anxiety and challenge managing her

5   emotions (anxiety/depression/negative self talk, excessive worry)."  AR 1437.  Dr. Ives also

6   reported that stress exacerbates chronic pain, headaches, and inability to sleep.  *Id.*  Dr. Ives rated

7   Plaintiff as seriously limited in most other areas of ability to do work-related activities including

8   ability to follow rules, ability to interact with coworkers and supervisors, ability to use judgement,

9   ability to function independently, and ability to concentrate.  *Id.*  Dr. Ives explained:

> Client has trouble [with] concentration, moderate distractibility,
> forgets what she is doing. Limited due to significant social anxiety,
> disapproval, hypersensitivity, work related PTSD resulting in social
> avoidance, intense distress when exposed to PTSD triggers. Good
> judgement unless highly stressed or triggered. Because of her anxiety
> and perceived judgment from others, interaction with supervisors
> (coworkers, public as well) could impact her stress level and ability
> to function.

15   *Id.*

16   With regard to impairment of ability to understand, remember, and carry out instruction,

17   Dr. Ives rated Plaintiff as having only a "fair" (defined at AR 1437 as "function in this area is

18   seriously limited, but not absent") ability to perform simple job instructions.  Dr. Ives found that

19   Plaintiff "has difficulty concentrating, tracking her thoughts, memory, and is moderately

20   distractable.  She has trouble with comprehension-able to only read short portions at a time.  With

21   every day tasks, she forgets what she is doing."  AR 1438.  Dr. Ives rated her judgment and her

22   ability to maintain personal appearance as "good."  AR 1437.  She rated as "fair" her ability to

23   behave in an emotionally stable manner and relate predictably in social situations, demonstrate

24   reliability, maintain attention and concentration, function independently, follow work rules, relate

25   to others including the public and supervisors, and understand and carry out simple instructions.

26   *Id.* 1437-38.  Dr. Ives stated that Plaintiff "[m]aintains casual appropriate appearance.  When

27

28   _____

functioning (*e.g.*, individual "unable to keep a job").  *Id.* at 34.

1  stressed or highly frustrated, she has difficulty managing emotions resulting in angry outbursts.

2  She can be reliable unless she has significant symptoms of severe pain, impaired sleep, migraines,

3  or PTSD/anxiety". *Id.* Dr. Ives concluded her assessment as follows: "Extreme self-doubt,

4  insecurity, and PTSD impairs ability to function well with others and make decisions.

5  Unpredictable intense pain makes reliable capacity difficult. Cognitive impairment affects work-

6  related activities." *Id.*

7         On February 6, 2017, Melody Samuelson, Psy.D., performed a psychological evaluation.

8  AR 400-06. Plaintiff related that she had lost both her parents during a period of building

9  depression. AR 401. She reported difficulty completing simple household tasks and making

10  complex decisions that required attention, but that she was independent in self-care activities,

11  could go out alone, took her dog on a walk, paid bills and managed money appropriately, and had

12  good relationships with friends and family. AR 402-03.

13         On examination Plaintiff was cooperative but presented with a disheveled appearance and

14  depressed and anxious mood, needed instructions repeated, and was unable to recite the months of

15  the year backward. AR 403-05. Her mood was depressed and affect was flat, and she reported

16  feelings of depression, including hopelessness, helplessness, and worthlessness. AR 403. Dr.

17  Samuelson stated that Plaintiff was cooperative and putting forth her best effort. AR 403.

18  Diagnoses were Major Depressive Disorder, recurrent, moderate, PTSD, and Pain Disorders. AR

19  405. Dr. Samuelson reported psychological limitations including moderately impaired ability to

20  maintain regular attendance, perform activities on a consistent basis, maintain safety, and

21  moderate need for additional supervision. AR 405-06. Dr. Samuelson opined that Plaintiff would

22  only have mild difficulties performing simple and repetitive tasks, and moderate difficulty

23  performing complex and detailed tasks, maintaining attention/concentration/persistence/pace,

24  working with others and accepting instructions, maintaining regular attendance, performing

25  activities on as consistent basis, and working without additional or special supervision. *Id.*

26         On April 10, 2017, State Agency psychologist Aidaluz Tirado, Psy.D., reviewed the record

27  and opined that Plaintiff had: (1) a moderate limitation of ability to carry out detailed instructions,

28  (2) a moderately impairment of ability to maintain attention and concentration for extended

United States District Court
Northern District of California

1  periods, and (3) a moderate impairment of ability to complete a normal workday and workweek

2  without interruptions from psychologically based symptoms, and (4) a moderate limitations of

3  ability to perform at a consistent pace without an unreasonable number and length of rest periods,

4  but that she was capable of sustaining cpp (concentration, persistence, and pace) over the course of

5  a 40-hour workweek and 8-hour workday.  AR 81.  Dr. Tirado also opined that Plaintiff had: (1) a

6  moderate limitation of ability to interact appropriately with the general public; (2) a moderate

7  limitation of ability to accept instructions and respond appropriately to criticism from supervisors;

8  and (3) a moderate limitation of ability to get along with coworkers or peers without distracting

9  them or exhibiting behavioral extremes, but that she was capable of maintaining superficial

10  contact with coworkers, supervisors, and the general public.  AR 82.  Dr. Tirado opined that

11  Plaintiff had: a moderate limitation of ability to respond appropriately to changes in the work

12  setting, but that she would be able to adapt to routine workplace stressors and changes.  *Id.*

13  Dr. Tirado opined Plaintiff remained capable of: (1) completing 1-2-step repetitive tasks on

14  a consistent basis; (2) completing some multistep tasks; (3) at least superficially interacting with

15  coworkers, supervisors, and the general public; (4) handling some lower levels of stress or change

16  and adapt to routine workplace stressors and changes (though she may have some difficulty in

17  high-stress environments); and (5) sustaining concentration, persistence, or pace, over the course

18  of a 40-hour workweek and 8-hour workday.  AR 82-83.

19  On July 31, 2017, State Agency consultant K. Gregg, M.D., reviewed the record and

20  opined that Plaintiff did not have any severe psychiatric limitations.  AR 96-97.

21  On January 31, 2018, Plaintiff reported to Dr. Ives that she was working as a helper for an

22  elderly couple, that she enjoyed her work despite the long commute, she received positive

23  feedback, was still taking online classes, and planned to update her resume.  AR 1463.  In

24  February 2019 she acknowledged feeling better.  AR 1441-45.  Dr. Ives noted Plaintiff had "self-

25  doubts" and was "hypersensitive to other's perceived negative beliefs about her," but was making

26  "[p]rogress" as she was at least "[c]onsidering volunteer work."  AR 1441.

27      **2.      Physical Health Records**

28  Kaiser records from November 30, 2015 show that Plaintiff was seen in the physical

5

1    therapy department because she was having mid-back and neck pain and chronic headaches. AR

2    365-67. There was shooting pain in her right fourth & fifth fingers, her pain was aggravated by

3    stress, and symptoms were aggravated by driving, raking, and exercise with six-pound weights.

4    AR 365-66. Assessment was moderately severe and irritable chronic neck and thoracic spine pain.

5    AR 367. Plaintiff reported taking two 60-minute brisk walks daily with her dog. AR 366.

6         On December 7, 2015, Plaintiff was seen by Hari Lakshmanan, M.D., who observed that

7    despite chronic neck pain due to degenerative changes, Plaintiff was in no acute distress and had

8    full range of neck motion, 5/5 motor strength, normal gait, and negative Spurling's (for radiating

9    neck pain/cervical radiculopathy) and Hoffman's (for neurological issues affecting the back) tests.

10   AR 364. Dr. Lakshmanan recommended epidural cervical injections. *Id.* A cervical MRI from

11   2012 showed left neuroforaminal narrowing most pronounced at C4-C5. *Id.*

12        On December 23, 3015, Plaintiff had a cervical epidural injection. AR 359-60.

13        On June 8, 2016, Konstantin Zaharoff, M.D., an occupational medicine physician,

14   prescribed massage therapy for low back pain. AR 356.

15        On August 31, 2016, Plaintiff had another cervical epidural injection. AR 354-55.

16        On December 5, 2016, a repeat cervical MRI showed degenerative disc disease at C4-5

17   unchanged from 2012. AR 350-51, 507.

18        Plaintiff saw Dr. Lakshmanan again on December 12, 2016, for axial neck pain and upper

19   trapezius pain, worse with sustained reaching or repetitive overhead activities. AR 348-49. Dr.

20   Lakshmanan made largely normal findings including normal range of motion despite Plaintiff's

21   axial neck pain. AR 349. There were still no signs of radiculopathy, neurological pain, or other

22   neurological issues, and Dr. Lakshmanan recommend a "conservative approach," including

23   cervical epidural steroid injections, physical therapy, exercise, mind-body medicine, acupuncture,

24   and chiropractor/massage. AR 349-50, 514-15. Plaintiff reported that she did "yoga/pilaites [sic]

25   combo class." AR 349, 514.

26        On March 16, 2017, Soheila Benrazavi, M.D., performed an internal medicine examination

27   for Social Security. AR 457-61. On examination Dr. Benrazavi reported mild paraspinal spasm

28   and mildly reduced range of motion. AR 458-59. Dr. Benrazavi rated Plaintiff as capable of

United States District Court
Northern District of California

1    lifting 50 pounds occasionally, 25 pounds frequently, and able to walk and stand 6 hours in an 8-

2    hour day.  AR 460.  On May 2, 2017, Dr. Zaharoff provided a residual functional capacity limiting

3    Plaintiff to working no more than work 40 hours every two weeks, not to exceed two consecutive

4    days.  AR 578.  Dr. Zaharoff opined that Plaintiff would be expected to miss more than two days

5    of work a month.  *Id.*  Dr. Zaharoff reexamined Plaintiff on February 5, 2019 and confirmed the

6    prior assessment.  AR 1435-36.

7            On May 10, 2017, Plaintiff had a physical therapy evaluation with Lory Teicheira, P.T.

8    AR 689-91.  Teicheira noted poor function on sit to stand and painful extension of the thoracic

9    spine.  AR 690.  Teicheira provided the following assessment: "Patient presents with history of

10   fused L3 lumbar spine and recent thoracic pain flare up.  Patient []has developed thoracic fulcrum

11   for movement of thoracolumbar spine with decreased abdominal strength and poor hip recruitment

12   pattern for body mechanics.  Should improve with decreasing thoracic overuse.  Fair rehab

13   candidate due to extent of past history."  AR 691.

14           On May 31, 2017, Teicheira noted that Plaintiff had gotten trigger point injections when

15   seen by Dr. Zaharoff earlier that month.  AR 702-04.  Teicheira provided the same assessment as

16   the May 10 visit.  AR 704.  On June 13 Plaintiff was unable to reach forward without pain.  AR

17   722.  Teicheira recommended home therapy techniques such as flexibility exercises, self-

18   mobilization, strength training and neuromuscular reeducation.  *Id.*

19           On June 20, 2017, thoracic spine x-rays showed diffuse disc space narrowing.  AR 732.

20           On August 21, 2017, Steven Isono, M.D., an orthopedic surgeon, performed a qualified

21   medical evaluation for Plaintiff's workers' compensation claim.  AR 589-605.  Dr. Isono noted

22   that since 2003 Plaintiff received conservative treatment except for two back surgeries in 2009 and

23   2015.  AR 589-97, 601.  Dr. Isono reported 4+/5 weakness of the left L3 nerve root, sensation was

24   dysesthetic along the left L3 distribution, and the femoral stretch test was positive on the left and

25   negative on the right.  AR 597.  There was tenderness of the cervical spine.  AR 599.  Dr. Isono

26   rated the severity of disability as consistent with a Diagnosis-Related Estimate Category V.[3]  AR

27

28   _____
     [3] Dr. Isono used the American Medical Association Guide to the Evaluation of Permanent
     Impairment Fifth Edition.  AR 601.  This Guide is used in California's Workers Compensation

1   601.  Dr. Isono further noted that, because of Plaintiff's persistent complaint, an MRI scan of her

2   cervical spine was repeated on December 5, 2016 and compared with the previous 2012 study.

3   AR 594-95.  Because the 2016 did not reveal any changes, her doctors continued conservative

4   treatment (medications and physical therapy).  AR 595.  Dr. Isono recommended continuing the

5   same conservative treatment including injections.  AR 604.

6       On September 27, 2017, James Stark, M.D., performed an evaluation for Plaintiff's

7   workers' compensation case.  AR 1482.  Plaintiff reported intermittent daily low back pain with

8   radiation to the left leg, neck pain and migraine headaches.  AR 1483.  She reported being

9   independent in most self-care activities, able to carry light to medium objects, to stand and walk

10  up to a mile and for 30-60- minutes, sit and stand for 1-2 hours at a time, and perform postural

11  activities though with some difficulty.  AR 1483-84.  On examination there was increased tone in

12  the neck with tenderness, greater on the left than right.  AR 1486.  Range of motion of the neck

13  was normal.  *Id.*  Examination of the lumbar spine demonstrated iliolumbar tenderness.  *Id.*

14  Flexion was to 55 degrees.  *Id.*  There was weakness of the left great toe extensor.  *Id.*  Left hip

15  flexion against resistance caused pain.  *Id.*  Deep tendon reflexes were hyperactive in the in the

16  upper extremities and at the patellas (+3).  AR 1487.  There were positive Hoffman's responses.

17  *Id.*  Dr. Stark opined that Plaintiff's condition had not changed since 2010; that she could have

18  continued working in the accommodated position at Kaiser if she had not been terminated; and

19  that she was limited to light work by the low back injury.  AR 1489.  He found no impairment

20  referable to the cervical spine and did not discuss or consider any mental limitations.  *Id.*

21      In a letter dated February 22, 2018, Jet King-Shing Ho, M.D., a Kaiser neurologist who

22  had treated Plaintiff since 2007, stated that Plaintiff suffers from migraine headaches and routinely

23  needs to take rizatriptan to relieve the headaches.  AR 606.  Dr. Ho indicated that after medication

24  she should not operate a motor vehicle for 1-2 hours.  *Id.*

25      State agency nonexamining medical consultants A. Dipsia, M.D., and G. Williams, M.D.,

26  opined that Plaintiff could perform light work, except she could occasionally climb ramps or

27

28  _____

system.  *See* State of California, Schedule for Rating Permanent Disabilities 1-3 (Jan. 2005).

8

1    stairs, stoop, kneel, crouch, and crawl; and frequently balance and climb ladders, ropes, or

2    scaffolds.  AR 79-80, 94, 98-99.

3          The Kaiser record documents chronic migraine headaches during the period at issue: AR

4    365 (11/30/15 - weekly headaches); AR 533 (3/7/17 - beginning acupuncture treatments for

5    migraine headaches and chronic neck pain); AR 543 (3/14/17 - having painful headache); AR 549

6    (3/20/17 - headaches with increased photosensitivity to light; Imitrex not working), AR 570

7    (4/16/17 – headache; Imitrex not working), AR 748 (8/3/17 - medication prescribed for headache);

8    AR 763 (8/15/17 - restart acupuncture for headache); AR 773 (8/22/17 - acupuncture for

9    continuing headache); AR 781 (9/12/17 – acupuncture; two to three headaches since last

10   treatment); AR 926 (3/6/18 - having a horrible headache); AR 1355 (1/4/19 - headache lasting 4

11   days).

12          **III.    SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

13         On October 19, 2016, Plaintiff filed a claim for Disability Insurance Benefits, alleging

14   disability beginning on August 9, 2016.  AR 187-88.  On April 11, 2017, the agency denied

15   Plaintiff's claim, finding she did not qualify for disability benefits.  AR 103-07.  Plaintiff

16   subsequently filed a request for reconsideration, which was denied on August 3, 2017.  AR 102,

17   111-18.  On August 14, 2017, Plaintiff requested a hearing before an Administrative Law Judge

18   ("ALJ").  AR 119-20.  ALJ Serena Hong conducted a hearing on April 11, 2019.  AR 33-70.

19   Plaintiff testified in person at the hearing and was represented by counsel, Glenn Clark.  The ALJ

20   also heard testimony from Vocational Expert Malcolm Brodzinsky.

21   **A.    Plaintiff's Testimony**

22         Plaintiff testified that after being terminated from Kaiser she had a tremendous amount of

23   anxiety about leaving her house because she "didn't want to see anybody" and have them "ask me

24   what I was doing with my life or how I was or anything.  So I would leave at like nighttime and

25   shop in the middle of the night or walk my dog in the middle of the night at the high school where

26   I knew I wouldn't see anybody because I felt very ashamed of myself."  AR 46.

27         Plaintiff attempted to return to work in 2018 for a friend, assessing the care needs of

28   elderly parents, but she was unable to deal with the commute and the need to report to five

United States District Court
Northern District of California

9

different siblings.  She found it too much and quit.  AR 47-48.  She also testified that her nursing license was reinstated and her therapist encouraged her to return to nursing work, but she had a lot of doubt in herself and "just [didn't] feel capable anymore."  AR 45.

Plaintiff testified that she has trouble with concentration and remembering.  AR 47.  She had difficulty walking longer than 30 minutes at a time, standing was difficult, and lifting was limited to 20 pounds.  AR 50.  She also reported episodic neck pain and burning arm pain, with improvement and being treated with epidural injections about every six months.  AR 51.  She reported unpredictable migraine headaches and that taking Neurontin for pain caused a generalized tired feeling and fuzzy thinking.  AR 52-53.  She testified to having difficulty with sleep which left her unable to function for half a day to days afterward.  AR 53-54.

Plaintiff described her disability as:

> I deal daily with chronic pain and anxiety and the pain mainly stems from my back injury and the subsequent effects of the surgeries themselves.  I developed migraines after I injured my back and they're very unpredictable.  And so from day to day I don't know how I'm going to feel.  And most days I don't feel well.  And especially emotionally well.  I've had a lot of -- tremendous amount of anxiety that has paralyzed me in most of the areas of my life where I feel like I'm a different person than I used to be and I've been getting help for all that.

AR 43.

Plaintiff testified that she sometimes went to her cabin in Healdsburg, which required a 2.5 hours' drive, and that she walked with her dogs.  AR 55-56.  She also stated that she remained able to attend to her own needs, take care of her pets, walk daily, cook simple meals, do dishes/laundry, drive, shop, and manages finances.  AR 82, 261-63.  She did Pilates and yoga, which aggravated her left leg but helped her on an emotional level.  AR 59.

**B.     Vocational Expert's Testimony**

The ALJ presented a series of hypotheticals to the vocational expert.  First, the ALJ asked the expert to assume a hypothetical individual of Plaintiff's age and education that is

> limited to performing work at the light exertional level but cannot climb ladders, ropes, and scaffolds and can perform other postural maneuvers such as stooping, crouching, and crawling on an occasional basis.  The individual cannot perform any overhead reaching and can perform frequent other reaching.  The individual is

United States District Court
Northern District of California

> limited to frequent handling and fingering.  And . . . the individual must avoid concentrated exposure to hazards such as unprotected heights and moving machinery.  And the individual is limited to performing simple, routine tasks with only occasional interaction with the public.

AR 64-65.  When asked if such an individual could perform any of Plaintiff's past work, the expert responded they could not, but they could perform other work such as a mail clerk in an office, a merchandise marker and a housekeeping cleaner.  AR 65-66.

In the second hypothetical, the ALJ asked the expert to assume the same individual but with "a limitation to occasional interaction with coworkers and supervisors, add to that that the person would work best in an environment with few changes in the work routine and that an individual would work best in an environment that is task oriented and not production pace."  AR 66.  The expert responded that it would not affect the merchandise marker position, but the housekeeping cleaner position would be limited to night shifts so there would be limited interaction with others, and the mail clerk position would be eliminated because there is "a reasoning involved in that beyond task oriented."  AR 66-67.  The expert testified the individual could also work as a price marker (different than a merchandise marker in that the individual marks the price of merchandise rather than marking merchandise for what it is).  AR 67.

In a third hypothetical, the ALJ asked the expert to assume the same individual as in hypothetical two but limited to performing work at a sedentary level.  *Id.*  The expert responded there would be no jobs available.  AR 67-68.  The expert also testified that all work would be precluded for an individual who had a moderate impairment of ability to maintain regular attendance in the workplace defined as being unable to show up for work twice a month.  AR 69.

## C.    ALJ's Decision and Plaintiff's Appeal

On July 12, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not disabled.  AR 7-23.  This decision became final when the Appeals Council declined to review it on May 26, 2020.  AR 1-5.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On December 30, 2020, Plaintiff filed the present Motion for Summary Judgment.  On January 29, 2021, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the

1    claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

2    any medically determinable physical or mental impairment which can be expected to result in

3    death or which has lasted or can be expected to last for a continuous period of not less than 12

4    months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

5    enough that the claimant is unable to perform previous work and cannot, based on age, education,

6    and work experience "engage in any other kind of substantial gainful work which exists in the

7    national economy." *Id.* § 423(d)(2)(A).

8        The regulations promulgated by the Commissioner of Social Security provide for a five-

9    step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

10   404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

11   F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

12       At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

13   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

14   involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (simplified).  Here, the

15   ALJ determined Plaintiff had not performed substantial gainful activity since August 9, 2016.  AR

16   12.

17       At step two, the ALJ decides whether the claimant's impairment or combination of

18   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

19   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

20   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

21   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

22   impairments: degenerative disc disease, major depressive disorder, and PTSD.  AR 12.

23       At step three, the ALJ evaluates whether the claimant has an impairment or combination of

24   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

25   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

26   describe impairments that are considered "to be severe enough to prevent an individual from doing

27   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

28   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

1    "For a claimant to show that his impairment matches a listing, it must meet all of the specified

2    medical criteria.  An impairment that manifests only some of those criteria, no matter how

3    severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

4    claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

5    to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

6    age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

7    did not have an impairment or combination of impairments that meets the listings.  AR 13.

8         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

9    the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

10   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

11   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

12   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

13   it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

14   perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

15   determined Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),

> 16   except she can never climb ladders, ropes or scaffolds; occasionally
> 17   perform all other postural activities; never reach overhead but
>      perform frequent other reaching; frequently handle or finger
> 18   bilaterally; must avoid concentrated exposure to hazards (such as
>      unprotected heights and moving machinery); and is limited to simple
> 19   routine tasks with only occasional interaction with the public,
>      coworkers, and supervisors; and she would work best with few
> 20   changes in the work routine; and in an environment that is task-
>      oriented and not production-pace.

21   AR 13-14.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.

22   AR 22.

23        At step five, the burden shifts to the agency to prove that "'the claimant can perform a

24   significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting

25   *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

26   on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the

27   _____

28   [4] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational
     experts by establishing through rulemaking the types and numbers of jobs that exist in the national

testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[5]  *Id.*  Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including housekeeping cleaner, merchandise marker, and price marker.  AR 22-23.

**B.      Plaintiff's Arguments**

Plaintiff argues the ALJ: (1) failed to properly consider the medical opinions of record; (2) failed to include all her limitations in the hypotheticals to the vocational expert; (3) improperly found that she can perform light work; and (4) provided unfair and irrelevant reasons for rejecting her subjective complaints.

**C.      Medical Opinions**

Plaintiff argues the ALJ failed to (1) provide clear and convincing reasons for rejecting Dr. Ives's opinion, (2) provide reasons for not including the limitations reported by Dr. Samuelson, (3) consider Dr. Isono's opinion, and (4) provide specific and legitimate reasons for rejecting Dr. Zaharoff's opinion.

---

economy."  *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Id.* at 461-62 (footnotes omitted).  The guidelines are commonly known as "the grids".  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).
[5] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Legal Standard[6]

In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat him; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . . [T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* at 830-31.

Even where a treating or examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725. Conclusory statements by the ALJ are insufficient; he "must set forth [his or] her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*,

---

[6] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, the agency's final decision was issued after the effective date of the final rules (July 2019), but Plaintiff filed her claim before (August 2016). Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 2.    Dr. Ives

The ALJ gave Dr. Ives's assessment "little weight" to the extent it was inconsistent with the ALJ's findings as to mental limitations.  AR 20.  The ALJ cited two factors for rejecting Dr. Ives's opinion.  First, the ALJ noted Dr. Ives had written there was a "good prognosis with commitment to therapy."  *Id.*; *see also* AR 334, 581 (12/4/16 and 5/3/17 identical statements from Dr. Ives: "Prognosis: Good with commitment to therapy- 1-3 years focusing on Cognitive Behavioral Therapy, Acceptance and Commitment Therapy, Mindfulness and EMDR.").  Plaintiff argues a prognosis cannot provide a clear and convincing reason to reject Dr. Ives's opinion because it is a prospect of recovery based on the usual course of a disease, and a forecast will often vary from the actual course of an illness.  Pl.'s Mot. at 6.  Plaintiff also notes that the ALJ's citation of Dr. Ives's prognosis is a partial quote, leaving out that improvement was expected in "1-3 years."  AR 334, 581.

Second, the ALJ rejected Dr. Ives's opinion as "vague" with the following explanation:

> Dr. Ives opined in February 2019 that the claimant "may be fairly functional at times," but "her capacity is unpredictable" because of her psychiatric symptoms.  Dr. Ives did not describe specific functional limitations but described "unpredictable" interactions with supervisors and coworkers, as well as difficulty managing her emotions when "highly stressed or frustrated."

AR 20 (citing AR 1437-39).  Plaintiff argues the ALJ "apparently concluded that symptoms of mental illness which are episodic or triggered by stress need not be considered in deciding a Social Security claim," and that such a conclusion is unreasonable because symptoms of mental illness "almost always have triggers and/or periods of exacerbation.  An ALJ cannot reject a functional limitation simply because it is not continuously present."  Pl.'s Mot. at 7.

The Court finds the ALJ failed to properly evaluate Dr. Ives's opinion.  First, the ALJ did not provide clear and convincing reasons supported by substantial evidence for rejecting her findings.  The ALJ gave Dr. Ives's opinion "partial weight" to the extent it was consistent with objective findings, but otherwise rejected it summarily because "Dr. Ives generally describes only

United States District Court
Northern District of California

1   vague limitations."  AR 20.  This is the type of conclusory statement that the Ninth Circuit has

2   repeatedly held insufficient.  *See Garrison*, 759 F.3d at 1012-13 ("In other words, an ALJ errs

3   when he rejects a medical opinion or assigns it little weight while doing nothing more than

4   ignoring it, asserting without explanation that another medical opinion is more persuasive, or

5   criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.");

6   *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not

7   supported by sufficient objective findings . . . does not achieve the level of specificity our prior

8   cases have required, even when the objective factors are listed seriatim."); *Beech v. Colvin*, 2014

9   WL 2931177, at *8 (C.D. Cal. June 26, 2014) (finding harmful error in an ALJ's "conclusory"

10  rejection of a treating physician's medical source statement in the case of a claimant diagnosed

11  with myofascial pain syndrome because the ALJ's rejection was "impermissibly conclusory and

12  provides no specific reference to any inconsistencies between [the treating physician's] opinion

13  and plaintiff's treatment records.  Rather, the ALJ merely states that [the treating physician's]

14  'opinion is inconsistent with [plaintiff's] medical records.'"); *Regennitter v. Comm'r of SSA*, 166

15  F.3d 1294, 1299 (9th Cir. 1999) (noting that "conclusory reasons will not justify an ALJ's

16  rejection of a medical opinion"); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (broad

17  and vague reasons for rejecting the treating physician's opinion do not suffice).

18          Second, although the ALJ found that Dr. Ives did not describe specific functional

19  limitations, Dr. Ives in fact opined that Plaintiff could not tolerate the stress of employment

20  because she had significant social anxiety, disapproval hypersensitivity, work triggered PTSD

21  with intense distress when exposed to triggers, and social avoidance.  Dr. Ives wrote that increased

22  stress caused increased anxiety causing difficulty managing emotions, depression, negative self-

23  talk, excessive worry and inability to cope.  AR 1437-39.  Although Dr. Ives was presented with a

24  check-the-box form, she also included a written explanation for her limitations.  AR 1437-38.

25  Characterizing Dr. Ives's assessment as "vague" and rejecting it for that reason was not a "clear

26  and convincing" reason based on substantial evidence in the record.

27          Third, it is not clear whether the ALJ applied the factors set forth in 20 C.F.R. §

28  404.1527(c).  Those regulations "provide that, when a treating source's opinions are not given

18

United States District Court
Northern District of California

1    controlling weight, an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3-6)

2    in determining how much weight to give each opinion." *Garrison*, 759 F.3d at 1012 n.11.  These

3    factors include the length of the treatment relationship and the frequency of examination, the

4    nature and extent of the treatment relationship, supportability, consistency, and specialization.  An

5    ALJ is required to analyze these factors "because, even when contradicted, a treating or examining

6    physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . .

7    even if it does not meet the test for controlling weight.'"  *Id.* at 1012 (quoting *Orn*, 495 F.3d at

8    633).  There is no indication these factors were considered.

9         In sum, the Court finds the ALJ failed to provide clear and convincing reasons for rejecting

10   Dr. Ives's opinion.  As discussed below, remand is appropriate for further consideration.

11        **3.    Dr. Isono**

12        As noted above, Dr. Isono was a qualified medical examiner in Plaintiff's workers'

13   compensation claim.  He rated her disability as Diagnosis-Related Estimate Category V, the most

14   impaired of the five categories for worker' compensation claims.[7]  AR 601.  However, there is no

15   indication the ALJ gave any consideration to Dr. Isono's report.  An ALJ errs if she "does not

16   explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

17   medical opinion over another . . . ."  *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen*, 100 F.3d at

18   1464).  Defendant argues "the ALJ implicitly preferred the opinion of another Qualified Medical

19   Examiner, Dr. Stark."  Def.'s Mot. at 7.  However, "[l]ong-standing principles of administrative

20   law require us to review the ALJ's decision based on the reasoning and factual finding offered by

21   the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been

22   thinking."  *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

23        Further, although Dr. Isono's opinion stems from workers' compensation proceedings, an

24   ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a

25   state workers' compensation proceeding, or because it is couched in the terminology used in such

26

27   _____

[7] Dr. Isono used the American Medical Association Guide to the Evaluation of Permanent
28   Impairment Fifth Edition.  AR 601.  This Guide is used in California's Workers Compensation
     system.  *See* State of Cal., Schedule for Rating Permanent Disabilities 1–3 (Jan. 2005).

19

proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247-48 (3d Cir. 1984) (holding that by failing to consider medical reports submitted in state workers' compensation proceeding the ALJ failed to weigh all of the evidence of record)); *see also Lester*, 81 F.3d at 832 (holding that the ALJ erred in rejecting a physician's reports because they "were clearly obtained by the claimant's attorney for the purpose of litigation," and stating that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"). Instead, the ALJ should "'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." *Booth*, 181 F. Supp. 2d at 1106; *Gonzalez v. Comm'r of SSA*, 2018 WL 1426655, at *7 (N.D. Cal. Mar. 22, 2018) ("Simply because medical evidence was derived from a worker's compensation proceeding does not mean the ALJ is not required to review that medical evidence and explain why such evidence should be afforded particular weight."); *Heun-Davidson v. Berryhill*, 2017 WL 5054657, at *6 (C.D. Cal. Nov. 1, 2017) ("An ALJ may not disregard a medical opinion simply because it was initially elicited in a state workers' compensation proceeding. Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way he would evaluate records obtained otherwise") (simplified). Because it is not clear that the ALJ adequately "translated" Dr. Isono's opinion into Social Security terms, let alone considered it, remand is appropriate for further consideration. Accordingly, the decision must be reversed.

### 4.   Dr. Samuelson

Plaintiff argues the ALJ rejected Dr. Samuelson's opinion because she "simply ignored the limitations reported by Dr. Samuelson, as well as the VE's testimony that moderate attendance problems, as reported by Dr. Samuelson, would preclude the performance of SGA." Pl.'s Mot. at 9.

In her decision, the ALJ states she afforded Dr. Samuelson's opinion "great weight." AR 21. The ALJ noted that Dr. Samuelson reported psychological limitations including moderately impaired ability to maintain regular attendance, perform activities on a consistent basis, and maintain safety, and moderate need for additional supervision. AR 20-21 (citing AR 405-06).

20

1   The ALJ also considered Dr. Samuelson's opinion that Plaintiff would only have mild difficulties

2   performing simple and repetitive tasks, and moderate difficulty performing complex and detailed

3   tasks, maintaining attention/concentration/persistence/pace, working with others and accepting

4   instructions, maintaining regular attendance, performing activities on as consistent basis, and

5   working without additional or special supervision.  *Id.* (citing AR 405-06).  The ALJ found Dr.

6   Samuelson's opinion was "based on and consistent with a thorough in-person examination of the

7   claimant, as well as generally consistent with . . . objective findings."  AR 21.

8          Although the ALJ gave Dr. Samuelson's opinion great weight, it is not clear whether she

9   considered the additional limitations noted by Plaintiff, who argues that "[s]imilar to Dr. Ives, Dr.

10   Samuelson rated [Plaintiff] as having difficulty with day-to-day work activities, including

11   attendance and safety due to inattention and depression," and that "Dr. Samuelson stated there was

12   an impaired ability to maintain regular attendance in the work place and perform activities on a

13   consistent basis due to inattention; and impaired ability to perform work activities without special

14   or additional supervision because of a combination of inattention, depression, and anxiety."  Pl.'s

15   Mot. at 8-9.  Further, as noted above, the ALJ did not give adequate reasons for rejecting Dr.

16   Ives's and Dr. Isono's opinions, and reconsideration of those opinions may affect the ALJ's

17   analysis of Dr. Samuelson's opinion as well.  Accordingly, the Court finds any decision regarding

18   Dr. Samuelson's opinion premature.

19          **5.     Dr. Zaharoff**

20          Plaintiff has been under the care of Dr. Zaharoff in the workers' compensation department

21   at Kaiser since at least 2007 (AR 592-94), with reports of earlier visits with him in 1997 and 2003

22   (AR 1485).  She argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

23   Zaharoff's opinion.  Pl.'s Mot. at 15.  However, the ALJ summarized Dr. Zaharoff's opinion and

24   then provided the following reasons for giving it little weight:

25                  While these opinions are afforded some weight to the extent that they
26                  are consistent with the above-discussed objective findings, such as
                    imaging and clinical findings consistent with cervical spine
27                  degenerative disc disease, which are consistent with limiting the
                    claimant to the light exertional level and no overhead reaching; they
28                  are otherwise generally afforded little weight, as the extreme degree
                    of limitations outlined are inconsistent with the above-discussed

> largely normal findings, including negative straight leg raise, generally negative neurological exam, normal muscle bulk and tone, and normal gait with no assistive device; as well as inconsistent with the claimant's relatively full daily activities, including walking her dog daily and intact capacity for generally intact basic activities of daily living.

AR 19-20.  In addition, the ALJ provided a detailed review of the record in her determination of Plaintiff's RFC (AR 14-18), which she references as part of her evaluation of Dr. Zaharoff's opinion (AR 19-20).  The Court finds this detailed and thorough summary of the facts, coupled with the ALJ's findings, could be sufficient to satisfy the specific and legitimate standard.  *See Thomas*, 278 F.3d at 957 (requiring the ALJ to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").  However, given the ALJ's failure to adequately consider all medical opinions of record, it is unclear whether reconsideration of those opinions may affect the ALJ's analysis of Dr. Zaharoff's opinion as well.  Accordingly, the Court finds any decision regarding Dr. Zaharoff's opinion premature.

**D.      Remaining Arguments**

As Plaintiff's remaining arguments depend in large part on the ALJ's consideration of the medical opinions, the Court finds that any decision on them is premature.  However, the Agency should take them into account as part of its reconsideration.

**E.      Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine.  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met.  First, the Court asks, "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1020).  Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and

22

1    whether further administrative proceedings would be useful." *Id.* (simplified).  Third, the Court

2    then "credit[s] the discredited testimony as true for the purpose of determining whether, on the

3    record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at

4    1101).

5          It is only "rare circumstances that result in a direct award of benefits" and "only when the

6    record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the

7    record supported the reasons provided by the ALJ for denial of benefits." *Id.* at 1047.  Further,

8    even when all three criteria are met, whether to make a direct award of benefits or remand for

9    further proceedings is within the district court's discretion.  *Id.* at 1045(citing *Treichler*, 775 F.3d

10   at 1101).  While all three credit-as-true factors may be met, the record as a whole could still leave

11   doubts as to whether the claimant is actually disabled.  *Trevizo*, 871 F.3d at 683 n.11.  In such

12   instances, remand for further development of the record is warranted.  *Id.*

13         As discussed above, the Court finds the ALJ failed to fully and fairly develop the record

14   when evaluating Plaintiff's disability claim.  However, it is not clear that the ALJ would be

15   required to find her disabled.  Accordingly, remand for further proceedings is appropriate.

16                              **VI.    CONCLUSION**

17         For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES**

18   Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This case is **REMANDED** for

19   further administrative proceedings consistent with this order.  The Court shall enter a separate

20   judgment, after which the Clerk of Court shall terminate the case.

21         **IT IS SO ORDERED.**

22

23   Dated: April 19, 2021

24

25                                        THOMAS S. HIXSON
                                          United States Magistrate Judge
26

27

28

*United States District Court*
*Northern District of California*